# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| Westport Fuel Systems Canada Inc., | Case No. 2:21-cv-00455[JRG/RSP] |
| *Plaintiff*, | LEAD CASE |
| v. | |
| Nissan North America, Inc., | **JURY TRIAL DEMANDED** |
| *Defendant*. | |
| General Motors, LLC, | Case No. 2:21-cv-00456[JRG/RSP] |
| *Defendant*. | CONSOLIDATED CASE |

## DEFENDANT GENERAL MOTORS, LLC's MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404 OR IN THE ALTERNATIVE TO STAY

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................................1

II.     PROCEDURAL BACKGROUND....................................................................................2

III.    THIS CASE SHOULD BE TRANSFERRED TO EDMI .................................................3

        A.      Relevant Factual Background ...............................................................................3

        B.      Legal Standard .....................................................................................................4

        C.      Jurisdiction and Venue are Proper in EDMI.........................................................5

        D.      The Private Interest Factors Favor Transfer ........................................................5

                1.      Access to sources of proof is easier in EDMI.............................................5

                2.      Compulsory process is available for most relevant third-party
                        witnesses in EDMI, but not in this District.................................................7

                3.      Trial in EDMI will reduce the burden on witnesses ...................................8

                4.      Judicial economy favors transfer to EDMI.................................................8

        E.      The Public Interest Factors Also Favor Transfer ...............................................10

                1.      Court congestion favors transfer...............................................................10

                2.      EDMI has a local interest in deciding this case ........................................10

                3.      The remaining public factors are neutral ..................................................11

IV.     IN THE ALTERNATIVE THIS CASE SHOULD BE STAYED PENDING BOSCH'S
        DECLARATORY JUDGMENT ACTION ......................................................................11

        A.      GM Is Merely Accused Of Selling Vehicles With The Allegedly
                Infringing Bosch Injection Valves......................................................................12

        B.      GM Will Be Bound By The Decision In The Bosch Suit.....................................14

        C.      Bosch Is The Only Source Of The Accused Fuel Injection Valve .......................14

        D.      The Traditional Stay Factors Favor Staying This Case As Well..........................15

V.      CONCLUSION...............................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020)................................................................5, 6

*Arnold v. Remington Arms Co.*,
  No. 6:16-cv-0074, 2017 WL 9285419 (E.D. Tex. Feb. 17, 2017)............................................6

*CyWee Grp. Ltd. v. Huawei Device Co.*,
  No. 2:17-cv-495, 2018 WL 4002776 (E.D. Tex. Aug. 22, 2018)............................................12

*Deep Green Wireless LLC v. Ooma, Inc.*,
  2:16-cv-0604, 2017 WL 679643 (E.D. Tex. Feb. 21, 2017)...................................................10

*Fundamental Innovation Systems International LLC v. Toyota Motor Corp. et al.*,
  No. 2:21-cv-00281 (E.D. Tex. Mar. 29, 2022) ........................................................11

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)........................................................7, 8, 10

*In re Google Inc.*,
  588 Fed. Appx. 988 (Fed. Cir. 2014).................................................13, 15

*In re Google LLC*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .................................................10

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990)........................................................2, 12

*Lighthouse Consulting Group, LLC v. Trust Bank*,
  No. 2:19-cv-00340, 2020 WL 6781977 (E.D. Tex. April 7, 2020) ..................................12, 15

*In re Nintendo Co.*,
  544 Fed. Appx. 934 (Fed. Cir. 2013)...................................................13

*In re Nintendo of Am., Inc.*,
  756 F.3d 1363 (Fed. Cir. 2014)........................................................2, 12

*Odom v. Microsoft Corp.*,
  596 F.Supp.2d 995 (E.D. Tex. 2009)...................................................11

*Optimum Power Sols. LLC v. Apple, Inc.*,
  794 F.Supp.2d 696 (E.D. Tex. 2011).....................................................7

*Realtime Data, LLC v. Fujitsu Am., Inc.*,
  No. 6:16-CV-01035, 2017 WL 772699 (E.D. Tex. Feb. 28, 2017)..........................................8

*Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*,
  1985 WL 72065 (D. Mass. 1985) ...........................................................................................14

*Seven Networks, LLC v. Google LLC*,
  No. 2:17-cv-00442, 2018 WL 4026760 (E.D. Tex. Aug. 15, 2018)....................................7, 9

*Sonrai Memory Limited v. LG Electronics Inc.*,
  No. 6:21-cv-00168, 2022 WL 545051 (W.D. Tex. 2022) .......................................................13

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
  657 F.3d 1349 (Fed. Cir. 2011)...............................................................................................12

*Va. Innovation Sci., Inc. v. Amazon.com, Inc.*,
  No. 4:18-cv-474–477, 2019 WL 3082314 (E.D. Tex. July 15, 2019) ....................................10

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) .............................................................................................5, 11

*In re Volkswagen Group of America, Inc.*,
  No. 2022-108, 2022 WL 697526 (Fed. Cir. 2022) ............................................................2, 10

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...............................................................................................5, 8

*Westport Fuel Sys. Canada Inc. v. FCA USA LLC d/b/a FCA Group US LLC*,
  No. 2:21-cv-00457 (E.D. Tex. Dec. 15, 2021) ..................................................................2, 3, 9

*Westport Fuel Sys. Canada Inc. v. Ford Motor Co.*,
  No. 2:21-cv-00453 (E.D. Tex. Dec. 15, 2021) ...............................................1, 2, 3, 4, 6, 8, 9

*Westport Fuel Sys. Canada Inc. v. Mercedes-Benz USA LLC*,
  No. 2:21-cv-00454 (E.D. Tex. Dec. 15, 2021) ....................................................................2, 3

*Westport Fuel Sys. Canada Inc. v. Nissan North America, Inc.*,
  No. 2:21-cv-00455 (E.D. Tex. Dec. 15, 2021) ....................................................................2, 3

**STATUTES**

28 U.S.C. §§ 1331..........................................................................................................................5

28 U.S.C. §§ 1338(a) .....................................................................................................................5

28 U.S.C. § 1400(b) .......................................................................................................................5

28 U.S.C. § 1404(a) ................................................................................................................1, 5, 8

**OTHER AUTHORITIES**

Local Rule CV-7(h) ................................................................................................................17

Pursuant to 28 U.S.C. § 1404(a), Defendant General Motors, LLC ("GM") respectfully moves to transfer this case to the U.S. District Court for the Eastern District of Michigan ("EDMI"). In the alternative, GM moves to stay under the customer-suit exception in view of the declaratory judgment action filed by Robert Bosch LLC, the manufacturer of the accused part.

## I.    INTRODUCTION

*First*, this case bears no connection with this venue. Plaintiff Westport is a Canadian company with a principal place of business in Vancouver, Canada. Dkt. 1 at ¶ 1. Westport's only location in the United States is an office that it maintains in Novi, Michigan. Ex. 1 at ¶ 2. The two asserted patents list the same set of three inventors, all of whom are identified on the patents as residents of Vancouver. *See* Dkt. Nos. 1-3, 1-4. One of the inventors appears to now live in Ann Arbor, Michigan. Ex. 1 at ¶ 3. The patents, according to Westport's complaint, are a result of work done by the named inventors as employees of Westport in Vancouver, and in connection with a project done with "a major U.S. automobile manufacturer"—Ford—headquartered in Michigan. Dkt. 1 at ¶¶ 30, 31, 34; *see also Westport Fuel Sys. Canada Inc. v. Ford Motor Co.*, No. 2:21-cv-00453 (E.D. Tex.), Dkt. 1 at ¶¶ 31, 34.

Defendant GM is headquartered in Detroit. Ex. 1 at ¶ 4. The accused product is a fuel-injector valve made by a third-party, Bosch, and incorporated into GM vehicles. Ex. 2 at ¶ 4. Bosch and the engineers who designed and work with the accused fuel-injector valve, along with any relevant documents, are in Farmington Hills, Michigan, and in Germany. *Id*. at ¶ 9. GM's buyer for the accused Bosch part, and the engineers who work on the integration of that part into GM vehicles, all work in Warren, Michigan, and interacted largely with Bosch employees in Farmington Hills, Michigan. *Id*. at ¶ 2; Ex. 4 at ¶¶ 5, 7, 8. Any relevant GM documents are located either in Warren or in Pontiac, Michigan. Ex. 2 at ¶ 6; Ex. 4 at ¶ 8.

The only "hook" to this District alleged in the Complaint—the fact that GM dealerships do

business here—has nothing to do with the facts giving rise to the claim, and was recently held by the Federal Circuit to be an insufficient basis on its own to confer proper venue. *In re Volkswagen Group of America, Inc.*, No. 2022-108, 2022 WL 697526, at \*8 (Fed. Cir. 2022); *see, e.g.*, Dkt. 1 at ¶¶ 9–27 (referring to "dealerships"). The case should be transferred to EDMI.

*Second,* and in the alternative, the case should be stayed in view of Bosch's DJ action of non-infringement against Westport under the customer-suit exception. Westport is suing five OEM automakers on the same fuel injector valve sourced from Bosch. The Complaints are separate but the infringement contentions are identical. *Compare* Ex. 1 at ¶ 5 to ¶ 6 and Exs. D and E thereto. GM, like the other OEMs, is only accused of infringing to the extent its vehicles contain the accused Bosch component. *Id*. The "suit by the manufacturer generally take[s] precedence," *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014), because "in reality, the manufacturer is the true defendant in the customer suit." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990). Here, the "true defendant" is Bosch, and this case should be stayed in view of the manufacturer's DJ suit.

## II.    PROCEDURAL BACKGROUND

On December 15, 2021, Westport brought this action against GM, asserting infringement of two expired patents, U.S. Patent Nos. 6,298,829 ("'829 Patent") and 6,575,138 ("'138 Patent") (the "Asserted Patents"). Dkt. 1 at ¶ 3. The Asserted Patents concern high-pressure fuel injection valves for automobile combustion engines. *Id*. at ¶ 40.

Westport also brought nearly-identical actions against Nissan, FCA, Mercedes-Benz, and Ford, all in this District.[1] In all five cases, Westport alleges infringement by a Bosch fuel-injector,

---

[1] EDTX Case Nos. 2:21-cv-00453 (Ford); 2:21-cv-00454 (Mercedes-Benz); 2:21-cv-00455 (Nissan); 2:21-cv-00457 (FCA).

Part No. 0445117010 ("the Bosch Fuel Injector"). Every vehicle identified in each of the five complaints allegedly infringes because it contains the Bosch Fuel Injector. The claim charts that Westport attached to the five separate OEM complaints are substantively identical. *Compare* Ex. 1 at ¶ 5 to ¶ 6 and Exs. D and E thereto. There are no allegations that GM or any of the other OEMs are modifying, installing, or using the Bosch fuel-injector in a way that has any bearing on infringement.

GM filed its Answer, Affirmative Defenses, and Counterclaims on February 22, 2022. Dkt. 23. All four of the other OEMs, however, have filed motions to dismiss for improper venue. *See Mercedes-Benz*, No. 2:21-cv-00454, Dkt. 11; *FCA*, No. 2:21-cv-00457, Dkt. 19; *Nissan*, No. 2:21-cv-00455, Dkt. 30; *Ford*, No. 2:21-cv-00453, Dkt. 20. FCA and Ford both contend that this case should proceed against them, if at all, in EDMI.

On April 4, 2022, Bosch filed a declaratory judgment action of non-infringement, alleging that the Bosch part does not infringe the claims of the Asserted Patents. *See* Ex. 1 at ¶ 7 and Ex. F thereto. Bosch's complaint identifies these five cases, including the case against GM, specifically by name, noting that these cases were only brought against the OEMs as Bosch's customers of the Accused Bosch Fuel Injector. *Id.* (Ex. F at ¶ 9). All four of the other OEM defendants have moved to stay in view of the Bosch DJ action.

## III.    THIS CASE SHOULD BE TRANSFERRED TO EDMI

### A.    Relevant Factual Background

**<u>Plaintiff Westport</u>.** Westport is headquartered in Vancouver, Canada. Dkt. 1 at ¶ 1. In its Complaint, Westport alleges that the research and development that resulted in the Asserted Patents occurred in or around 1999, and was conducted by Alan B. Welch, Irawan Rahardja, and Mike Hebbes. *Id.* at ¶ 30. Welch, Rahardja, and Hebbes are all named inventors on the Asserted Patents. *See* Dkt. Nos. 1-3, 1-4. At the time of their research and application for patent, all three inventors

lived in Vancouver. *Id*. According to Westport's Complaint, its fuel injection valve was developed in connection with two projects with "a major U.S. automobile manufacturer," which Westport identifies as Ford. Dkt. 1 at ¶¶ 31, 34; Case No. 2:21-cv-00453 (E.D. Tex.), Dkt. 1 at ¶¶ 31, 34.

**Defendant GM.** GM is headquartered in Detroit, Michigan. Ex. 1 at ¶ 4. GM purchased the Accused Bosch Fuel Injector from Bosch. Ex. 2 at ¶¶ 6–7. The Accused Bosch Fuel Injector was used in 6.6 L V8 Duramax® LML Engine ("the 6.6L LML Engine"). *Id*. at ¶ 4. The 6.6L LML Engine was made by Duramax in Dayton, Ohio. *Id*. Once assembled, the 6.6L LML Engine was shipped to vehicle assembly plants—none of which are in Texas—where it was then assembled into certain models of the GMC Sierra HD (Model Years 2011–2016) and the Chevrolet Silverado HD (Model Years 2011–2016). *Id*. at ¶¶ 4–5. GM selected Bosch as the supplier of the fuel system for these 6.6L diesel engines after a series of technical reviews conducted at GM's facilities in Warren, MI, and Pontiac, MI, and Bosch's facility in Farmington Hills, MI. *Id*. at ¶¶ 6, 9.

**Manufacturer of Accused Product, Bosch.** The Accused Bosch Fuel Injector was designed by Bosch in Germany and manufactured in Turkey. *Id*. at ¶ 5. The primary engineering team and other support staff responsible for the Bosch fuel injector are located in Farmington Hills, Michigan. *Id*. at ¶ 9; Ex. 4 at ¶ 5. Bosch has asserted that, because "the only fuel injection valves identified by Westport Fuel as infringing any claim of either of the Patents-In-Suit are Accused Bosch Products," "Bosch—not the entities named as defendants in the Texas Lawsuits—is the real party-in-interest." Ex. 1 at ¶ 7 and Ex. F thereto at ¶ 16. In its Initial and Additional Disclosures under the Discovery Order, Westport identified Bosch as one of the entities having knowledge of relevant facts in this case. Ex. 1 at ¶ 8 and Ex. G thereto at 4.

**B.      Legal Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1404(a)'s threshold inquiry is whether the case could initially have been brought in the proposed transferee forum. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If so, this Court then considers the relevant private and public interest factors. *Id*.

The private interest factors are: (1) "the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors are: (1) "the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws." *Id*. A party seeking transfer under § 1404(a) must demonstrate that the transferee venue is "clearly more convenient" than the current District. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The plaintiff's choice of venue is not a factor in this analysis. *Id*. at 314–15.

## C.   Jurisdiction and Venue are Proper in EDMI

GM's principal place of business is its world headquarters in Detroit, Michigan, so it is subject to general personal jurisdiction in the EDMI. *See* Ex. 1 at ¶ 4. EDMI has subject-matter jurisdiction over cases, such as this, arising under the patent laws of the United States. 28 U.S.C. §§ 1331 and 1338(a). EDMI is also a proper venue. GM's global headquarters is there, so it resides there for purposes of 28 U.S.C. § 1400(b).

## D.   The Private Interest Factors Favor Transfer

### 1.   Access to sources of proof is easier in EDMI

"Sources of proof" refers to "non-witness evidence, such as documents and other physical evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020). This factor favors transfer "when

a majority of the tangible and documentary evidence is located in the transferee court's district." *Arnold v. Remington Arms Co.,* No. 6:16-cv-0074, 2017 WL 9285419, at *2 (E.D. Tex. Feb. 17, 2017). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Apple,* 979 F.3d at 1340.

Here, GM's documents concerning the accused product are all located in EDMI. Ex. 2 at ¶¶ 6–12; Ex. 3 at ¶¶ 3–8; Ex. 4 at ¶¶ 5–8. For example, all of GM's communications and interactions with the supplier of the accused product, Bosch, took place at GM's facilities in Warren and Pontiac and at Bosch's facility in Farmington Hills, all in Michigan. Ex. 2 at ¶¶ 6–12; Ex. 4 at ¶¶ 7–8. Additionally, the GM employees responsible for developing the fuel systems including the accused Bosch fuel injector are all located in EDMI. *Id.*

In addition, because the accused product is designed, manufactured, and sold by a third-party, Bosch, the location of Bosch's documents should also be considered under this factor. Like GM's documents, Bosch's documents concerning the Accused Bosch Fuel Injector are likely located in EDMI at Bosch's Farmington Hills, Michigan, engineering facility. Ex. 2 at ¶¶ 6, 9; Ex. 4 at ¶ 5. Specifically, the primary engineering team and other support staff responsible for the Bosch fuel injector are located in Farmington Hills, MI. Ex. 2 at ¶ 9; Ex. 4 at ¶ 5. Some Bosch documents and witnesses may be in Germany. Ex. 2 at ¶ 9. Bosch has no Texas presence.

Consideration of Westport's documents does not support keeping the case in this District. Westport's relevant documents are likely to be found in Vancouver, Canada. Also, Westport worked with Ford on two separate projects in the 2000s to implement a vehicle using the fuel injector having the features described in the Asserted Patents. *See* Case No. 2:21-cv-00453 (E.D. Tex.), Dkt. 1 at ¶¶ 31 and 34. Thus, documents related to these ventures with Ford are also likely located

in Ford's headquarters in Dearborn, Michigan. *Id*. at ¶ 2.

### 2. Compulsory process is available for most relevant third-party witnesses in EDMI, but not in this District

The availability of compulsory process over the attendance of third-party witnesses likely to have "relevant and material information" is an important factor in the transfer analysis. *Seven Networks, LLC v. Google LLC*, No. 2:17-cv-00442, 2018 WL 4026760, at *7 (E.D. Tex. Aug. 15, 2018); *In re Genentech*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Transfer is favored when "more third-party witnesses reside within the transferee venue" than within the chosen forum. *Optimum Power Sols. LLC v. Apple, Inc.*, 794 F.Supp.2d 696, 701 (E.D. Tex. 2011). That is the case here.

Because the manufacturer of the accused product (and as discussed below the "true defendant") is Bosch, Bosch's engineers and other corporate witnesses will necessarily have highly relevant information to this dispute—including information about the design, development, implementation, functionality, sale, and operation of the accused products. Most of these witnesses reside in EDMI, where Bosch's engineers interacted with GM's engineers. *See* Ex. 1 at ¶¶ 7, 9 and Ex. F thereto at ¶ 1. Although some relevant witnesses and information may reside with Bosch in Germany, no Bosch witness resides in this District.

The inventors of the Asserted Patents will also have relevant information and will be necessary witnesses, but none of them reside in this District either. According to Westport, all three inventors are "former employees" of Westport, and therefore are third-parties. Ex. 1 at ¶ 8 and Ex. G thereto at 3–4. One of the inventors, Mike Hebbes, appears to reside in Ann Arbor, MI. Ex. 1 at ¶ 3. The other two appear to reside in Vancouver, Canada. Ex. 1 at ¶ 10; Dkt. Nos. 1-3, 1-4. Also, prosecution counsel for the Asserted Patents, McAndrews, Held & Malloy, Ltd., located in Chicago, Illinois, is likely to have relevant information relating to the prosecution of the Asserted Patents. Ex. 1 at ¶ 11; Dkt. Nos. 1-3, 1-4. Finally, because Bosch claims to have

developed the patented invention out of a project done with Ford, Ford witnesses in EDMI are also likely to have relevant information. Case No. 2:21-cv-00453 (E.D. Tex.), Dkt. 1 at ¶¶ 31, 34.

Thus, the majority of critical third-party witnesses is subject to compulsory process in EDMI, while no witnesses are subject to compulsory process in EDTX. This favors transfer.

### 3.      Trial in EDMI will reduce the burden on witnesses

The convenience for and cost of attendance of witnesses factor "is probably the single most important factor in transfer analysis." *In re Genentech,* 566 F.3d at 1343. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II,* 545 F.3d at 317.

Here, GM's witnesses reside in EDMI, roughly 1,100 miles from this District. This includes the engineer responsible for releasing the Bosch part for production, as well as the buyer of the Bosch part. Exs. 2–3. Thus, the collective time and effort for these witnesses to travel to, and prepare for and attend trial, in Texas, is significant. To the extent third party witnesses may testify, as discussed above, they either reside in EDMI (Bosch, Ford, and inventor Hebbes), or are closer to EDMI (prosecution counsel McAndrews Held & Malloy). Ex. 1 at ¶¶ 3, 9, 11.

Consideration of Westport's witnesses is "afforded less weight." *Realtime Data, LLC v. Fujitsu Am., Inc.,* No. 6:16-CV-01035, 2017 WL 772699, at *4 (E.D. Tex. Feb. 28, 2017). But even still, it is no more inconvenient to Westport's witnesses to testify in EDMI than it would be in EDTX. Westport is headquartered in Vancouver, Canada, and the Westport witnesses identified in Westport's initial disclosures—David Mumford and Lance Follett—both reside in Vancouver. Ex. 1 at ¶¶ 12–13. No Westport witness resides in EDTX.

### 4.      Judicial economy favors transfer to EDMI

The fourth private-interest factor is a catch-all factor including all practical considerations

"rationally based on judicial economy." *Seven Networks, LLC,* 2018 WL 4026760, at *12. For example, "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Id.* (citation omitted).

Here, Westport has asserted the same two patents against the same accused Bosch-sourced product as used by five different OEMs. The infringement allegations are identical across all five cases, meaning largely the same issues, claims, and defenses will be tried in all five cases. Much of the same evidence and witnesses will be relevant. Judicial economy and the avoidance of conflicting judicial results favors litigating and trying these cases together.

However, although all five cases currently reside in this District, the other four OEM Defendants are all seeking to dismiss the actions in this Court for improper venue. At least FCA and Ford contend that EDMI is the appropriate venue to hear their case. *See* Case No. 2:21-cv-00457 (E.D. Tex.), Dkt. 19; No. 2:21-cv-00453 (E.D. Tex.), Dkt. 20. To the extent any motion to dismiss is successful, GM's suit should follow to EDMI as well.[2]

In addition, due to judicial recusals, only two of the five OEM cases are pending before Judge Gilstrap, while the other three are pending before Judge Shroeder. Thus, even if all five cases proceed in this District, there may still be duplication of judicial efforts, with two different judges issuing opinions on the same issues, leaving potential for conflicting results.

In any event, the only fact giving rise to venue in this District, as alleged in Westport's Complaint, is that GM has dealerships selling vehicles here. However, after Westport filed its complaints, the Federal Circuit clarified that the location of an auto dealership does not establish

---

[2] Bosch filed its DJ action against Westport in the Eastern District of Virginia. GM contends that this actions should be stayed in view of Bosch's. However, the case should first be transferred to EDMI, who should then stay the case. If the Bosch action does not resolve this case (as discussed below it will), any further litigation (if any) should proceed in EDMI.

"the regular and established places of business of" the OEM automakers. *In re Volkswagen*, 2022 WL 697526, at *8. Thus, it is likely the cases against the other OEMs will be dismissed from this District, and either refiled in, or transferred to other districts, including, most likely, EDMI.

Finally, a transfer to EDMI would not negatively impact judicial economy or result in judicial waste because this case is still in its infancy. The parties have only filed pleadings at this stage. GM has not yet served its P.R. 3-3 and 3-4 disclosures, and this Court has yet to hear any substantive issue, including claim construction.

### E.     The Public Interest Factors Also Favor Transfer

#### 1.     Court congestion favors transfer

The first public-interest factor concerns the "speed with which a case can come to trial and be resolved," and favors the district that can bring a case to trial faster. *Deep Green Wireless LLC v. Ooma, Inc.*, 2:16-cv-0604, 2017 WL 679643, at *6 (E.D. Tex. Feb. 21, 2017). However, this factor is "the most speculative, and "case-disposition statistics may not always tell the whole story." *Va. Innovation Sci., Inc. v. Amazon.com, Inc.*, No. 4:18-cv-474–477, 2019 WL 3082314, at *32 (E.D. Tex. July 15, 2019). As a result, when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

For the 12-month period ending December 31, 2021, the median time from filing of a civil case to its disposition in EDTX was 8.0 months, and in EDMI, it was 9.7 months. Ex. 1 at ¶ 14. This modest difference is not significant.  Even if this difference was significant, it "cannot alone weigh heavily against transfer." *See In re Google LLC,* No. 2021-178, 2021 WL 5292267, at *3 (Fed. Cir. Nov. 15, 2021) ("*Google I*"). At best, this factor is neutral.

#### 2.     EDMI has a local interest in deciding this case

"The court must consider local interest in the litigation, because 'jury duty is a burden that

ought not be imposed upon the people of a community which has no relation to the litigation.'" *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

EDMI has a heavy local interest in deciding this case. GM's global headquarters is in Detroit, Michigan. Ex. 1 at ¶ 4. GM's Global Technical Center—the key location for GM's involvement with the Bosch fuel injector—is located in the Detroit Metropolitan area and employs over 21,000 employees. Ex. 1 at ¶ 15. GM has numerous other facilities and employees in EDMI, including the Flint Assembly plant which assembles full-size pickup trucks and employs over 5,500 employees. Ex. 1 at ¶ 16. Also, Bosch's U.S. headquarters is in Farmington Hills, Michigan. *See* Ex. 1 at ¶ 7 and Ex. F thereto at ¶ 1. Bosch employs hundreds, if not thousands, of individuals in the Detroit Metropolitan area.

Thus, EDMI has an obvious interest in adjudicating a dispute involving GM and Bosch.

### 3.    The remaining public factors are neutral

As to "the familiarity of the forum with the law that will govern the case," both EDTX and EDMI routinely handle complex patent cases, making this factor neutral. *Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1003–04 (E.D. Tex. 2009). Finally, because this case involves U.S. patent law, there will be no issues involving conflicts of laws or application of foreign law.[3]

## IV.    IN THE ALTERNATIVE THIS CASE SHOULD BE STAYED PENDING BOSCH'S DECLARATORY JUDGMENT ACTION

Where, as here, a plaintiff sues multiple defendants simply because they are all customers of the same accused part, "courts apply the customer suit exception to stay earlier-filed litigation

---

[3] This Court recently denied a similar motion to transfer brought by GM in *Fundamental Innovation Systems International LLC v. Toyota Motor Corp. et al.*, No. 2:21-cv-00281 (E.D. Tex. Mar. 29, 2022), ECF No. 80.  However, key facts from that case do not exist in this case: (i) the plaintiff was located in EDTX; (ii) a key supplier had facilities in EDTX; and (iii) the court was familiar with the asserted patents, because they had been previously litigated in EDTX.

against a customer while a later-filed case involving the manufacturer proceeds in another forum." *Spread Spectrum Screening LLC v. Eastman Kodak Co.*, 657 F.3d 1349, 1357 (Fed. Cir. 2011). That is, "[w]hen a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement…, the suit by the manufacturer generally take[s] precedence." *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014).

"At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit." *Katz*, 909 F.2d at 1464. The customer suit exception is "intended to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *CyWee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-cv-495, 2018 WL 4002776, at *3 (E.D. Tex. Aug. 22, 2018).

"[T]he primary question is whether the issues and parties are such that the disposition of one case would be dispositive of the other." *See Katz*, 909 F.2d at 1463. "In evaluating the customer-suit exception, courts consider three factors: (1) whether the customers in the first-filed action are mere resellers of products manufactured by the party in the second-filed action; (2) whether the customers in the first-filed action have agreed to be bound by any decision in the second-filed action, and; (3) whether the manufacturers in the second-filed action are the only source of the allegedly infringing activity or product." *Lighthouse Consulting Group, LLC v. Trust Bank*, No. 2:19-cv-00340, 2020 WL 6781977, at *1 (E.D. Tex. April 7, 2020) (internal quotes omitted). Here, each factor weighs in favor of a stay.

### A.   GM Is Merely Accused Of Selling Vehicles With The Allegedly Infringing Bosch Injection Valves

In its complaint and infringement contentions, Westport makes clear that its real dispute is with Bosch, not GM or the other OEM Defendants. *See* Ex. 1 at ¶ 5 and Ex. D thereto. The Accused

Instrumentalities are the Accused Bosch Fuel Injectors. *See id.* at ¶ 8 and Ex. G thereto at 3–4. No other manufacturer's fuel injectors are accused. Each of the OEM Defendants are only alleged to infringe to the extent that they are Bosch's customers and sell vehicles incorporating the Accused Bosch Fuel Injector. Westport does not allege that any OEM Defendant makes or sells the Accused Bosch Fuel Injector. To the contrary, Westport recognizes that GM and the other OEMs manufacture and sell "vehicles." *See* Dkt. 1 at ¶¶ 13, 16. Westport makes clear that Defendants' allegedly infringing conduct is based on their sale of "vehicles that embody products that infringe the [Patents-In-Suit]." *Id.* at ¶¶ 46, 48 (alleging accused vehicles "utilize[] eight [Bosch] injection valves (the 'Accused Instrumentalities')").

As mere resellers of the Accused Instrumentalities, Defendants "will have very little to offer in the way of evidence regarding the substantive aspects of the infringement case. They can add little to nothing regarding how the technology underlying the accused products works." *In re Nintendo Co.*, 544 Fed. Appx. 934, 941 (Fed. Cir. 2013). The fact that GM incorporates the Accused Bosch Fuel Injector into vehicles does not favor litigating separate suits by the OEMs, given the nearly complete overlap in issues, and Westport's use of "nearly identical infringement contentions to all [customer] defendants." *In re Google Inc.*, 588 Fed. Appx. 988, 990 (Fed. Cir. 2014) ("*Google II*"); *Sonrai Memory Limited v. LG Electronics Inc.*, No. 6:21-cv-00168, 2022 WL 545051, *4 (W.D. Tex. 2022) (finding customer-suit exception applies to "downstream products" containing the accused chip). Importantly, there are no contentions that GM or any of the other OEMs "modify and customize" the Accused Bosch Fuel Injector in a way that has any bearing on infringement. *Google II*, 588 Fed. Appx. at 990. As such, Bosch has relevant information and Westport can seek it directly from Bosch through discovery in the Bosch case (rather than attempt third party discovery in the Texas Lawsuits). Thus, this factor favors a stay.

### B.      GM Will Be Bound By The Decision In The Bosch Suit

The second factor also favors a stay. Bosch has sought "a declaratory judgment that neither Bosch nor the Accused Bosch Products (*e.g.*, at least the Bosch CRI 3.0 Piezo Injector having Bosch part number 0445117010) infringed, literally or under the doctrine of equivalents, any claim of the Patents-In-Suit." *See, e.g.*, Ex. 1 at ¶ 7 and Ex. F thereto at ¶¶ 5, 7, 29, 37. Presumably, Westport will counterclaim, allege infringement, and seek damages from Bosch. If Bosch wins, then there is no liability (either by Bosch or by any of the OEM Defendants). If Westport wins, it will recover damages from Bosch, which will necessarily include any damages associated with the Accused Bosch Products sold by Bosch to GM and the other OEMs. Critically, Westport does not practice the patents, so it has no ability to seek lost profits damages from either Bosch or the OEM defendants; and it can only recover a reasonable royalty on any infringing product once. Either way the Bosch DJ action turns out, the litigation against the OEM Defendants will be fully and finally resolved, and GM agrees to be bound by any decision in the Bosch action.

### C.      Bosch Is The Only Source Of The Accused Fuel Injection Valve

As shown in its complaints and infringement contentions, the only injection valve that Westport alleges infringes is a Bosch CRI 3.0 Diesel Fuel Injector. *See* Dkt. 1-5; Ex. 1 at ¶ 5 and Ex. D thereto.  GM does not make or sell injection valves and does not source the Accused Bosch Fuel Injector from any entity but Bosch. Whether Bosch is structured such that different corporate subsidiaries are responsible for the manufacturing, importing, and selling of the Accused Bosch Fuel Injector makes no difference; it is still Bosch that is the manufacturer and sole source of the product to GM and the other OEMs. *Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*, 1985 WL 72065, at *4–5 (D. Mass. 1985) (applying customer-suit-exception to importer and "sole source" of accused product who "is in the same position as a manufacturer").

As such, the Court should stay this lawsuit (along with the other OEM lawsuits) to allow

Bosch's declaratory judgment case to efficiently resolve Westport's infringement allegations.

> ### D. The Traditional Stay Factors Favor Staying This Case As Well

Even without the customer suit exception, the traditional stay factors weigh in favor of a stay. "[I]n considering a motion to stay, courts evaluate: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Lighthouse*, 2020 WL 6781977, at *2.

*First*, a stay would not prejudice Westport. The asserted patents are expired. *See* Dkt. Nos. 1-3, 1-4. Also, a stay would allow Westport to efficiently resolve its claim against Bosch in a single action in which Bosch is a named party. By contrast, this Court would adjudicate multiple suits against different OEMs, where Bosch is a third-party. The former is more efficient.

*Second*, a stay would dramatically simplify issues. The Bosch DJ Action will resolve infringement definitively, and it would apply to this case. If the Bosch case results in a finding of non-infringement, that would be dispositive of this action. If it finds the opposite, at the very least, one of the key issues in this case would already be resolved. Presumably, if Westport counterclaims, the Bosch DJ Action will definitively resolve all issues of liability and damages. On the other hand, if no stay were entered, this Court would be litigating largely the same issues as EDVA, resulting in judicial inefficiency, waste, and the potential for conflicting results. *Google II*, 588 Fed. Appx. at 990.

*Third*, as set forth above, this case is in its earliest stages. GM has answered, the parties have exchanged initial disclosures, and Westport has served initial infringement contentions. Otherwise, the rest of this case is still in front of the parties and the Court.

## V. CONCLUSION

GM respectfully requests that the Court transfer this case to EDMI, or alternatively stay.

Dated: May 4, 2022

*/s/ Dennis J. Abdelnour, with permission by*
*Michael E. Jones*
Michael E. Jones (State Bar No. 10929400)
mikejones@potterminton.com
Shaun W. Hassett (State Bar No. 24074372)
shaunhassett@potterminton.com
**POTTER MINTON, P.C.**
110 North College, Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

J. Michael Huget (P39150)
mhuget@honigman.com
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Tel: (313) 465-7000
Fax: (312) 465-8000

Dennis J. Abdelnour (admitted *Pro Hac Vice*)
dabdelnour@honigman.com
**HONIGMAN LLP**
155 North Wacker Drive, Suite 3100
Chicago, Illinois 60606
Tel: (312) 701-9300
Fax: (312) 701-9335

David J. Thomas (admitted *Pro Hac Vice*)
dthomas@honigman.com
**HONIGMAN LLP**
39400 Woodward Ave., Suite 101
Bloomfield Hills, MI 48304
Tel: (248) 566-8300
Fax: (248) 566-8643

*Counsel for Defendant General Motors, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned attorney hereby certifies that Defendant General Motors, LLC has

complied with the requirements of Local Rule CV-7(h). This motion is opposed. Specifically,

counsel for GM conferred with counsel for Westport on April 22, 2022, by telephone to discuss

possible resolution of the issues in this motion.  The parties were not able to come to agreement

on the above motion, and as such, the meet and confer process ended in an impasse.


/s/ *Michael E. Jones*
Attorney for Defendants